Mr. John F. Bennett Belle Isle City Attorney 170 East Washington Street Orlando, Florida 32801-2397
Dear Mr. Bennett:
You have asked for my opinion on substantially the following question:
May the duties of the Mayor of the City of Belle Isle be changed pursuant to a validly enacted charter amendment that, if adopted, will become effective during the mayor's current term?
Your letter states that the City Council of the City of Belle Isle recently appointed a charter review committee, which rendered a report recommending a change in the form of the city government from a strong mayor to a city council-city manager form of government. As part of this change, the duties of the mayor are being substantially diminished. The mayor will retain the power of veto, continue to set the agenda for council meetings, continue to preside over council meetings, and perform other, largely ceremonial, duties. The charter review committee recommended a transition period following approval by referendum and an effective date to coincide with the expiration of the current mayor's term of office in 2004. The committee's report was approved by the council. However, despite this recommendation, the city council's ordinance states that "this act shall take effect immediately or on the first legally permissible date." Thus, you ask whether it is legally permissible for the changes in the mayor's duties to take place prior to the end of the mayor's current term.
Section 166.021(1), Florida Statutes, a provision of the "Municipal Home Rule Powers Act," states that municipalities may exercise any power for municipal purposes except when expressly prohibited by law. Section166.021(3), Florida Statutes, provides that pursuant to the authority set forth in section 2(b), Article VIII, Florida Constitution, the legislative body of each municipality has the power to enact legislation concerning any subject upon which the state Legislature may act except, among other things, any subject that is expressly prohibited by the Constitution or any subject that is expressly preempted to state or county government by the Constitution or by general law.[1]
Section 166.021(4), Florida Statutes, provides:
"The provisions of this section shall be so construed as to secure for municipalities the broad exercise of home rule powers granted by the constitution. It is the further intent of the Legislature to extend to municipalities the exercise of powers for municipal governmental, corporate, or proprietary purposes not expressly prohibited by the constitution, general or special law, or county charter and to remove any limitations, judicially imposed or otherwise, on the exercise of home rule powers other than those so expressly prohibited. However, nothing in this act shall be construed to permit any changes in a special law or municipal charter which affect the exercise of extraterritorial powers or which affect an area which includes lands within and without a municipality or any changes in a special law or municipal charter which affect the creation or existence of a municipality, the terms of elected officers and the manner of their election except for the selection of election dates and qualifying periods for candidates and for changes in terms of office necessitated by such changes in election dates, the distribution of powers among elected officers, matters prescribed by the charter relating to appointive boards, any change in the form of government, or any rights of municipal employees, without approval by referendum of the electors as provided in s. 166.031. Any other limitation of power upon any municipality contained in any municipal charter enacted or adopted prior to July 1, 1973, is hereby nullified and repealed."
The proposed charter amendment for the City of Belle Isle does not affect the terms of elected officers, the manner of their election, or the distribution of powers among elected officers. Rather, you have advised this office that the charter amendment, if adopted, will reassign certain powers of the elected mayor to be performed by the appointed city manager. The mayor would continue to serve in that office throughout his term. Only his duties and responsibilities would change. The charter amendment would affect a change in the form of government of the City of Belle Isle from a strong mayor to a city council-city manager system and is appropriately subject, pursuant to section 166.021(4), Florida Statutes, to approval by referendum of the electors.
It is the rule that the power to create an office generally includes the power to modify or abolish it even though the office is occupied by a duly elected incumbent.[2]
Where the office is of legislative creation, the legislative body may, unless prohibited by the Constitution, control, modify, or abolish it whenever such a course may seem necessary, expedient, or conducive to the public good.[3]
The office of mayor of the City of Belle Isle is created legislatively in the charter of the municipality, which also establishes the duties of that office. Those duties and responsibilities may be modified, reduced, or added to by appropriate legislative act of the municipality. Under these circumstances, the appropriate legislative act to make such changes is the amendment of the charter by referendum pursuant to sections166.021(4) and 166.031 Florida Statutes.
Thus, it is my opinion that the duties of the Mayor of the City of Belle Isle may be changed pursuant to a validly enacted charter amendment that, if adopted, will become effective during the mayor's current term.
Sincerely,
Charlie Crist Attorney General
CC/tgh
[1] Section 166.021(3)(b) and (c), Fla. Stat.
[2] See, City of Miami v. Rodriguez-Quesada, 388 So.2d 258 at 259 (Fla. 3d DCA 1980). And see, City of Jacksonville v. Smoot, 92 So. 617
(Fla. 1922); Hall v. Strickland, 170 So.2d 827 (Fla. 1964); McQuillinMunicipal Corporations s. 12.118 (3rd Ed.); 9 Fla. Jur.2d Civil Servantsand Other Public Officers and Employees s. 2.
[3] City of Jacksonville v. Smoot, id., and 9 Fla. Jur 2d CivilServants id. s. 2. Cf., City of Miami v. Carollo, 748 So.2d 397 (Fla. 3d DCA 2000) in which the court determined that a City of Miami charter amendment changing the city government from an "executive" to an "administrative" mayor did not constitute abolishment of that office such that the mayor was subject to a new election.